NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000537
09-AUG-2019
08:52 AM**

NOS. CAAP-16-0000537 AND CAAP-16-0000538

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

NO. CAAP-16-0000537

KENNETH M. SKAHAN, Claimant-Appellant, v.
STUTTS CONSTRUCTION COMPANY, INC., Employer-Appellee,
and FIRST INSURANCE COMPANY OF HAWAII, LTD.,
Insurance Carrier-Appellee
(CASE NO. AB 2014-043(WH); (9-02-01024)(M))

AND

NO. CAAP-16-0000538

KENNETH M. SKAHAN, Claimant-Appellant, v.
STUTTS CONSTRUCTION COMPANY, INC., Employer-Appellee,
and FIRST INSURANCE COMPANY OF HAWAII, LTD.,
Insurance Carrier-Appellee
(CASE NO. AB 2014-042(WH); (9-13-54105)(M))

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Reifurth and Hiraoka, JJ.)

In this consolidated appeal, Claimant-Appellant Kenneth
M. Skahan appeals from the Decision and Order entered by the
Labor and Industrial Relations Appeal Board ("LIRAB") on June 21,
2016 ("June 21, 2016 Order") in Case No. CAAP-16-0000537, and the
Decision and Order entered by the LIRAB on June 22, 2016
("June 22, 2016 Order") in Case No. CAAP-16-0000538. In the June
21, 2016 Order, the LIRAB affirmed the January 15, 2014 Decision
of the Director of Labor and Industrial Relations, Disability
Compensation Division ("Director"), which granted in part and

denied in part Skahan's May 10, 2013 claim for workers' compensation benefits related to an injured right elbow and forearm ("WC Claim 2"). In the June 22, 2016 Order, the LIRAB affirmed the January 10, 2014 Decision of the Director, which denied Skahan's August 19, 2013 claim for workers' compensation benefits related to an asserted new injury to his right hand ("WC Claim 3").

I. Background

On August 6, 2002, Skahan filed a workers' compensation claim for a right forearm and right elbow injury ("WC Claim 1"), which he claimed occurred on June 19, 2002, in the course of employment with Employer-Appellee Stutts Construction Co., Inc. when he was installing and sanding coconut columns at work, using hand sanding blocks and an electric sander ("June 19, 2002 Work Injury"). In the claim, Skahan made no mention of any injury to his right hand or wrist. Insurance Carrier-Appellee First Insurance Company of Hawaii, Ltd. concluded that Skahan sustained a compensable injury and agreed to begin paying benefits.

Skahan thereafter sought treatment from Dr. Lora Aller for his June 19, 2002 Work Injury. On July 29, 2002, Dr. Aller diagnosed Skahan's June 19, 2002 Work Injury as tendinitis of the right elbow. On August 26, 2002, Dr. Aller reported in a clinical note ("August 26, 2002 Clinical Note") that Skahan's tendinitis was 75% resolved, but that Skahan was complaining of numbness in the hands, allegedly associated with hammering, and that Skahan may need a work-up for carpal tunnel syndrome ("CTS").

In November 2003, Dr. Aller noted that Skahan's right arm was 90% better, and recommended closure of the case. On December 6, 2003, First Insurance made its last payment for the June 19, 2002 Work Injury. A final report, dated April 16, 2004, was sent to Skahan notifying him that his case would be closed. Skahan did not submit any medical information to First Insurance between 2004 and 2011.

On May 9, 2011, Skahan sought treatment from Dr. Ryan Fusato for burning and tingling in the hands. Based on Skahan's

symptoms, Dr. Fusato referred Skahan to Dr. George Powell for testing of possible CTS. On June 28, 2011, testing by Dr. Powell revealed findings of "[b]ilateral mild to moderate median entrapment at the wrists, worse on the right versus left, consistent with [CTS]." Dr. Powell recommended CTS surgery. Skahan elected not to pursue surgery, allegedly "due to 'financial and living difficulties,'" notwithstanding that Skahan had insurance at the time to cover the operation.

On May 10, 2013, Skahan filed WC Claim 2 requesting a reopening of WC Claim 1. In WC Claim 2, Skahan identified the date of accident as June 19, 2002, attributed the injury to "repetitive hand sanding of wood columns," described his injury as "weakness in right hand & pain below right elbow," and explained that the "occupational disease has progressed to disability & need for surgery." WC Claim 2 forms the basis for Skahan's appeal in Case No. CAAP-16-0000537.

On August 19, 2013, Skahan filed WC Claim 3 in which he contended that his CTS had become disabling in March, 2013. Skahan identified the date of accident as March 1, 2013, and described his injury/illness as "a[n] Occupational Disease with disabling effects in March of 2013. This is a pre[-]existing Disease which was first treated in 2002[,]" and explained, in part, his reasons for filing as "Employer has not filed WC-1" and "I have filed for [CTS] benefits [in case] my 2002 case is not reopened."

On August 23, 2013, Skahan saw Dr. Daniel Capen for "[r]ight wrist and forearm tenderness, a weak grip and numbness," which Skahan attributed to "[r]epetitive hand sanding of wood columns." Dr. Capen submitted a Form WC-2 Physician's Report dated September 20, 2013, documenting the aforementioned and identifying the date of injury as June 19, 2002 ("September 20, 2013 WC-2 Report").

On September 17, 2013, Skahan attended an independent medical examination evaluation with Dr. Robert S. Harvey during which Dr. Harvey prepared a written report ("September 17, 2013 IME Report"). At the evaluation, Skahan related to Dr. Harvey that on June 19, 2002, he was using sandpaper to sand hexagonal

columns and that while sanding, he developed pain in the right forearm that went down to the wrist. Skahan additionally said that he had numbness in his right hand since 2000, before the June 19, 2002 Work Injury, that he stopped working for Stutts Construction in 2005, and that he briefly returned to work in 2009, but was only able to do so for less than a month.

On January 10, 2014, the Director issued a Decision denying Skahan's WC Claim 3 ("WC Claim 3 Decision"). The Director found that Skahan did not suffer an injury to his right hand arising out of and in the course of employment on March 1, 2013, since he was not employed by Stutts Construction at the time, and thus concluded that Skahan did not suffer a compensable injury to his right hand.

On January 15, 2014, the Director issued a Decision granting in part and denying in part WC Claim 2 ("WC Claim 2 Decision"). The Director granted Skahan's request for medical care for his right elbow and right forearm through April 16, 2004; but denied the claim for a right hand injury, determining that it was barred by the two-year and five-year statutes of limitations pursuant to Hawaii Revised Statutes ("HRS") section 386-82; and denied Skahan's request to reopen WC Claim 1, determining that it was barred by the eight-year statute of limitations pursuant to HRS section 386-89(c).

On January 21, 2014, Skahan filed two Notices of Appeal with LIRAB, the first with regard to the WC Claim 3 Decision, and the second with regard to the WC Claim 2 Decision. On February 3, 2014, Skahan filed two amended Notices of Appeal with LIRAB to correct the date referencing the WC Claim 3 Decision and the WC Claim 2 Decision.

On May 27, 2014, the Pretrial Order issued by LIRAB with regard to the appeal from the WC Claim 3 Decision, stated that "The sole issue to be determined is whether [Skahan] sustained a carpal tunnel injury to his right hand as a compensable consequence of the June 19, 2002 work injury." On January 12, 2015, the LIRAB held a trial to address both appeals.

The LIRAB entered the June 21, 2016 Order affirming the WC Claim 2 Decision. Based on Skahan's allegations and the

4

record, the LIRAB found that WC Claim 2 was "both a reopening of the June 19, 2002 work injury for further benefits, and a new claim for a June 19, 2002 hand or wrist injury in the form of CTS." As to his request to reopen, the LIRAB concluded that Skahan's May 10, 2013 request was barred by the eight-year statute of limitations under HRS section 386-89(c). As to Skahan's claim for a new injury to his right hand/wrist, the LIRAB concluded, in relevant part, that Skahan's May 10, 2013 claim for right CTS was barred by the two-year statute of limitations under HRS section 386-82, that it was also barred by the five-year statute of limitations under HRS section 386-82, and that the ruling in *Flor v. Holguin*, 94 Hawaiʻi 70, 9 P.3d 282 (2000), which allows the date of diagnosis for an injury arising out of an "occupational disease" to be used as the date of accident, was not applicable to this case.

The next day, the LIRAB entered the June 22, 2016 Order affirming the WC Claim 3 Decision. As to Skahan's claim that his CTS was a compensable consequence of the June 19, 2002 Work Injury, the LIRAB found and concluded that Skahan did not suffer a compensable injury to his right hand because his right CTS was not an injury that was sustained subsequent to or as a direct and natural result of the original, compensable June 19, 2002 Work Injury, but, instead was already a part of WC Claim 1. As to Skahan's claim that his injury was one by disease sustained on June 19, 2002, the LIRAB found and concluded that the compensability of the injury was addressed in the WC Claim 2 Decision and the June 21, 2016 Order, and that it was apparent from WC Claim 3 that he was using March 1, 2013 as the date of injury to circumvent any denial of his request to reopen WC Claim 1.

On July 5, 2016, Skahan filed two timely notices of appeal to this court; one from the June 21, 2016 Order, which initiated Case No. CAAP-16-0000537; and the other from the June 22, 2016 Order, which initiated Case No. CAAP-16-0000538. On July 11, 2019, the two cases were consolidated for disposition.

II.  Points of Error

On appeal, with regard to the June 21, 2016 Order, Skahan alleges that the LIRAB erred: (1) "by failing to apply the presumptions, in accordance with HRS section 386-85"; (2) "in concluding [that Skahan's] right hand or wrist, which was symptomatic since June or August 2002 and suspected as right CTS by Dr. Aller in August 2002, manifested in August 2002"; (3) in concluding that the WC Claim 2 for right CTS "was filed more than two years after the effects of the injury became manifest and is barred by the two-year statute of limitations set forth in HRS section 386-82"; (4) in concluding that Skahan's claim "is subject to both the two-[year] and five-year statute of limitations set forth in HRS section 386-82"; (5) in concluding that Stutts Construction "is not liable for, and Skahan is not entitled to, further medical benefits for the June 19, 2002 work injury after April 16, 2004"; (6) in denying Skahan's May 10, 2013 request to reopen the June 19, 2002 Work Injury; and (7) in affirming the WC Claim 2 Decision.

With regard to the June 22, 2016 Order, Skahan alleges that the LIRAB erred: (8) by failing to apply the "Presumptions," in accordance with HRS section 386-85; (9) "by limiting the sole issue of compensability to Carpal Tunnel of the right hand only"; (10) "by failing to correctly apply HRS section 386-3(a) to the compensability of [WC Claim 3] for Workers' Compensation Benefits"; (11) in concluding that Skahan "is actually claiming a CTS injury that occurred on June 19, 2002," and which was addressed in the WC Claim 2 Decision and June 21, 2016 Order; and (12) in affirming the WC Claim 3 Decision.

III. Discussion

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we affirm.

A.    CAAP-16-0000537: Appeal from the June 21, 2016 Order

(1) In his first point of error, Skahan asserts that the LIRAB failed to apply or correctly apply the presumptions in accordance with HRS section 386-85.[1/] Skahan argues that "nowhere in the [LIRAB]'s decision[] do they indicate that [Stutts Construction] had met the substantial evidence test, or that the [LIRAB] had applied it[;]" that "the [LIRAB] doesn't indicate that it had weighed and considered the evidence offered . . . against the evidence offered by [Skahan's] support[] of the claim[;]" and that "if the [LIRAB] had weighed and considered all the evidence of both Parties, it did not indicate whether any doubt existed, and if so, whether they had afforded [Skahan] the benefit of any doubt[.]"

The presumptions under HRS section 386-85 have no bearing on the LIRAB's June 21, 2016 Order, which disposed of Skahan's claims pursuant to the statute of limitations under HRS sections 386-82 and 386-89(c). Accordingly, Skahan's first point is without merit.

(2) In his second point of error, Skahan asserts that the LIRAB erred in concluding that his right hand or wrist, which was symptomatic since June or August 2002 and suspected as right CTS by Dr. Aller in August 2002, manifested in August 2002. Skahan contends that because his CTS was difficult to diagnose, the date of manifestation of his right CTS should have been the

---

[1/]    HRS section 386-85 identifies four presumptions that must be applied in favor of a claimant in a workers' compensation case:

> In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:
>
> (1)    That the claim is for a covered work injury;
>
> (2)    That sufficient notice of such injury has been given;
>
> (3)    That the injury was not caused by the intoxication of the injured employee; and
>
> (4)    That the injury was not caused by the wilful intention of the injured employee to injure oneself or another.

Haw. Rev. Stat. § 386-85 (1993).

date that Dr. Powell diagnosed him with CTS in June 2011. As such, Skahan implicitly challenges Finding of Fact ("FOF") 32 and Conclusion of Law ("COL") 2 of the June 21, 2016 Order.[2/]

Under HRS section 386-82 (1993), a claimant in a workers' compensation case is subject to a two-prong statute of limitations. Under the first prong, the right to compensation will be barred unless a written claim is made to the Director "[w]ithin two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest[]." Haw. Rev. Stat. § 386-82(1) (emphasis added). In Hawai'i, the effects of a workplace injury become manifest when "the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of [an] injury or disease." Hayashi v. Scott Co., 93 Hawai'i 8, 12, 994 P.2d 1054, 1058 (2000) (original brackets omitted) (quoting Demond v. Univ. of Hawaii, 54 Haw. 98, 104, 503 P.2d 434, 438 (1972)).

In FOF 32, the LIRAB found as follows:

> Based on [Skahan's] testimony that he experienced right hand and wrist symptoms shortly after sanding columns on June 19, 2002, and Dr. Aller's August 26, 2002 chart note confirming that such symptoms were reported to her on that date, [LIRAB] finds that the effects of [Skahan's] right CTS condition, manifested on August 26, 2002.

Although Skahan maintains that he never read or saw the August 26, 2002 Clinical Note, the record supports that Skahan was at least aware of his CTS-related symptoms when he complained of them to Dr. Aller during his August 26, 2002 visit. Indeed, Skahan testified at the January 12, 2015 trial that "[he] noticed [his] right wrist symptoms shortly after June 19, 2002[,]" and that since 2002 his CTS-related symptoms have gotten progressively worse.[3/]

---

[2/]    COL 2 provides, in pertinent part, "[Skahan's] right hand or wrist injury, which was symptomatic since June or August 2002 and suspected as right CTS by Dr. Aller in August 2002, manifested in August 2002."

[3/]    Skahan further testified that he did not become aware that he had CTS until June 2011 when Dr. Powell informed him that he had CTS but that "it's the same symptoms I have had ever since 2002."

Skahan contends that this case is similar to *Hayashi* in that his CTS was difficult to diagnose. In *Hayashi*, the Hawai'i Supreme Court acknowledged that the date on which a workplace injury manifests itself can be the date of diagnosis in some instances, such as with a temporomandibular joint ("TMJ") injury, where the injury is difficult to diagnose and must be properly identified before the necessary treatment can commence. 93 Hawai'i at 12, 994 P.2d at 1058. *Hayashi*, however, is distinguishable. In *Hayashi*, the court determined that the claimant was not aware that he was suffering from TMJ until a little over a year from the date of the accident when the claimant's doctor noted the possibility of a TMJ injury and suggested that the claimant see a specialist. *Hayashi*, 93 Hawai'i at 12, 994 P.2d at 1058. In comparison, Skahan was aware of his CTS-related symptoms on August 26, 2002, when he reported to Dr. Aller that he was suffering from numbness in the hands, and Dr. Aller noted that Skahan "may need carpal tunnel work up."

Accordingly, a reasonable person should have recognized the nature, seriousness, and probable compensable character of Skahan's right CTS on August 26, 2002. The LIRAB was therefore not clearly erroneous in finding and concluding that Skahan's right CTS condition manifested on August 26, 2002. *See Igawa v. Koa House Rest.*, 97 Hawai'i 402, 405-06, 38 P.3d 570, 573-74 (2001) (citing *In re Water Use Permit Applications*, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000) (providing standard of review for agency appeals from the LIRAB).

(3) In his third point of error, Skahan asserts that the LIRAB erred in concluding that his WC Claim 2 for right CTS was filed more than two years after the effects of the injury became manifest, and was barred by the two-year statute of limitations under HRS section 386-82. Skahan, however, provides no further argument. To the extent that Skahan challenges the date that his CTS manifested, we have already addressed the matter above. Therefore, we proceed to Skahan's fourth point of error, which overlaps with his third point.

(4) In his fourth point of error, Skahan asserts that the LIRAB erred in concluding that his WC Claim 2 was barred by

9

the two-year and five-year statutes of limitations under HRS section 386-82. We construe Skahan as also asserting that his WC Claim 2 arose from an injury by disease, thereby allowing him to use a June 28, 2011 date of diagnosis as the date of the accident under *Flor*.[4] Skahan challenges "this COL," which appears to be COL 2, and FOFs 8, 19, 20, 23, 24, 30, 31, 32, 33, and 36, but does not articulate the basis for his challenges. We will therefore only address the FOFs/COL to the extent that we can discern any argument stemming from them and only as they relate to the fourth point. *See Kakinami v. Kakinami*, 127 Hawaiʻi 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) ("noting that this court may 'disregard a particular contention if the appellant makes no discernible argument in support of that position'" (citing *In re Guardianship of Carlsmith*, 113 Hawaiʻi 236, 246, 151 P.3d 717, 727 (2007))).

As discussed above, HRS section 386-82 establishes a two-prong statute of limitations, which provides in relevant part:

> The right to compensation under this chapter shall be barred unless a written claim therefor is made to the director of labor and industrial relations[:]
>
> (1) Within *two years* after the date at which the effects of the injury for which the employee is entitled to compensation have *become manifest*; and
>
> (2) Within *five years* after the date of the accident or occurrence which *caused the injury.*

Haw. Rev. Stat. § 386-82 (emphasis added). Under HRS section 386-82, the two-year statute of limitations "does not begin to run until the claimant, as a reasonable [person], should recognize the nature, seriousness, and probable compensable character of [an] injury or disease." *Hayashi*, 93 Hawaiʻi at 12, 994 P.2d at 1058 (brackets in original; internal quotation marks omitted) (citing *Demond*, 54 Haw. at 104, 503 P.2d at 438).

---

[4] Specifically, Skahan argues that because his claim "is for a latent injury, by disease, proximately caused by or resulting from the nature of the employment, it is subject to the 2-year statute of limitations only, for the purpose of filing a timely claim upon manifestation of the injury."

When an "injury by disease" or "occupational disease" is implicated a different analysis is used. HRS section 386-3 (Supp. 2012) provides, in pertinent part, "[i]f an employee suffers personal injury . . . by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee[.]" Haw. Rev. Stat. §386-3(a).[5] In order to identify the "date of injury" in connection with the filing of a workers' compensation claim under HRS section 386-3, a claimant with an injury by disease "may rely upon the [] 'date of disability,' which typically is the last day of employment but, . . . may also be the date of diagnosis of the disabling condition[.]" *Flor*, 94 Hawai'i at 83, 9 P.3d at 395 (remanding case for determination of "date of disability" for purpose of establishing the applicable statute of limitations period, the date when benefits begin to accrue, and which version of the worker's compensation laws applied).

An "injury by disease" (or "occupational disease") is distinguished from an "accidental injury" in that the former "generally develops gradually over a long period of time[,]" while the latter "generally results from a discrete event—the time and place of which can be fixed[.]" *Flor*, 94 Hawai'i at 78, 9 P.3d at 390 (citing *Booker v. Duke Medical Center*, 256 S.E.2d 189, 197 (N.C. 1979)).

In FOFs 22, 23, 31, 32, and 33, the LIRAB found, that:

> 22. At trial [Skahan] testified that Dr. Aller never mentioned to him the possibility of CTS back in 2002. He asserted that he did not know he had CTS until he was tested by Dr. Powell in 2011. [Skahan] recalled that he noticed he

---

[5] Stated fully, HRS section 386-3(a) provides:

> (a) If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as provided in this chapter.
>
> Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of the employee's employment.

had right CTS symptoms shortly after June 29, 2002, and that he told Dr. Aller about the numbness and tingling in his right hand in 2002. [Skahan] believed that his physical therapy notes from 2002 documented classic symptoms for CTS. [Skahan] confirmed that he had problems with his right elbow, right forearm, and right hand, all three areas, since the June 19, 2002 work accident, and that his CTS was symptomatic since 2002, had never resolved, and had progressed or worsened over the years. [Skahan] did not explain why his initial claim filed for the June 19, 2002 work injury for the right forearm and elbow did not include his right hand or wrist, which he alleged was symptomatic shortly after the June 19, 2002 incident.

23. In describing his June 19, 2002 work injury, [Skahan] related that he hurt his right elbow, right forearm, and right hand on June 19, 2002, after using a hand sander to build hexagonal columns for a multi-million dollar home.

. . . .

31. Based on the allegations made by [Skahan] that his CTS resulted from a specific, traumatic event, i.e., sanding columns at work on June 19, 2002, for which there was a fixed time and place, and the fact that this event was the same event for which [Skahan] had filed a claim for right forearm and elbow injury, [LIRAB] finds that [WC Claim 2] was for an injury caused by work activities occurring on June 19, 2002.

32. Based on [Skahan's] testimony that he experienced right hand and wrist symptoms shortly after sanding columns on June 19, 2002, and Dr. Aller's August 26, 2002 chart note confirming that such symptoms were reported to her on that date, [LIRAB] finds that the effects of [Skahan's] right CTS condition, manifested on August 26, 2002.

33. [Skahan] should have recognized the nature, seriousness, and probable compensable character of his right hand or wrist condition in 2002 since he was symptomatic and had complained to Dr. Aller about those symptoms.

The record supports these findings.

Skahan's WC Claim 2 was based on a discrete event. Skahan expressly identified the date of injury as June 19, 2002, and expressly attributed the injury to the *specific* work activity of hand sanding wood columns. Skahan additionally testified, "I first noticed my wrist symptoms shortly after June 19, 2002[,]" and that since 2002, his CTS-related symptoms have gotten progressively worse. Unlike the claimant in *Flor*—who did not know the date that she contracted hepatitis C, which evidence revealed is usually asymptomatic for the first ten to twenty years after contracting the disease, and in some cases, may never manifest itself, 94 Hawai'i at 83, 9 P.3d at 395—Skahan knew the

date that he injured his right wrist or hand and the activity that gave rise to the alleged injury. Therefore, Skahan's injury was an accidental injury rather than an injury by disease. *See Flor*, 94 Hawai'i at 78, 9 P.3d at 390 ("When a disease causing injury results from an identifiable accident, rather than from a peculiar risk of the employment, it should be compensated as an accidental injury." (citing *Baldwin v. Jensen-Salsbery Laboratories*, 708 P.2d 556, 557-58 (Kan. Ct. App. 1985)).

Relying on *Hayashi* and *Mokiao v. Attractions Hawaii*, No. CAAP-12-0000582, 2016 WL 116337 (Haw. Ct. App. Jan. 11, 2016), Skahan argues that June 23, 2011, the date on which he was tested and definitively diagnosed with CTS by Dr. Powell, is the date on which his right hand or wrist injury manifested. As discussed above, *Hayashi* is distinguishable. So is *Mokiao*.

In *Mokiao*, the lack of documentation specifying exactly when claimant's doctor first identified her latent, psychological workplace injury justified LIRAB's failure to identify a singular date on which the effects of the injury became manifest. *See Mokiao*, 2016 WL 116337, at *1-2, *6. In contrast, there is documentation specifying exactly when Skahan's doctor first identified that Skahan might be suffering from a CTS-related injury. Moreover, Skahan's right hand or wrist injury was not latent, as he was well aware of his CTS-related symptoms since 2002.

Skahan additionally relies on *Miyake v. Welders, Inc.*, 71 Haw. 269, 788 P.2d 170 (1990) for the proposition that "a condition causing no loss of function and having no treatment should not be considered an injury that begins the timing period which limits recovery under the workers' compensation act." *Id.* at 272, 788 P.2d at 172. *Miyake* is inapposite because the injury in that case involved exposure to asbestos, which HRS section 386-82 explicitly states shall be exempt from the two-year and five-year statutes of limitations. *See* Haw. Rev. Stat. § 386-82. This case does not involve exposure to asbestos or any of the other conditions exempt from the two-year and five-year statutes of limitations under HRS section 386-82. Because Skahan's injury was an accidental injury, the LIRAB did not err in concluding

that the ruling in *Flor* that allows the date of diagnosis to be used as the date of accident is not applicable in this case.

Under HRS section 386-82, Skahan had two years from the date on which the effects of his right hand or wrist injury *became manifest* to file his claim for that injury. *See* Haw. Rev. Stat. § 386-82(1). In FOF 34, the LIRAB found:

> [Skahan's] May 10, 2013 claim for a right hand injury occurring on June 19, 2002, was filed more than two years after the effects of the injury became manifest on August 26, 2002. It was on that date that [Skahan] reported numbness in his hands to Dr. Aller and Dr. Aller suspected CTS for which a diagnostic work-up was recommended.

The record supports this finding.

The effects of Skahan's right hand or wrist injury became manifest on August 26, 2002, when he complained of numbness in his hands to Dr. Aller and Dr. Aller noted that he may need a CTS work up. Skahan thus had until August 26, 2004 to file his claim. Skahan did not file his claim until May 10, 2013. Therefore, the LIRAB was not clearly erroneous in finding and concluding that Skahan's WC Claim 2 was barred by the two-year statute of limitations under HRS section 386-82.

Under HRS section 386-82, Skahan also had five years from date of the accident or occurrence which *caused* the injury to his right hand or wrist to file his claim for that injury. Haw. Rev. Stat. § 386-82(2). In FOF 36, the LIRAB found:

> Even assuming that the two-year statute of limitations did not begin to run until June 2011, when CTS was definitively diagnosed, and that [Skahan's] claim was filed within two years of the date of manifestation, his May 10, 2013 claim was filed more than five years after the June 19, 2002 accident or occurrence which allegedly caused his right CTS.

The record supports this finding.

In his WC Claim 2, Skahan identified the date of the accident resulting in the injury to his right hand or wrist as June 19, 2002, and attributed the accident to repetitive hand sanding of wood columns. As such, June 19, 2002 establishes the date of the accident or occurrence which caused Skahan's injury to his right hand or wrist, and subsequently, Skahan had till June 19, 2007 to file his claim. Therefore, the LIRAB was not clearly erroneous in finding and concluding that Skahan's CTS was

14

not an injury by disease and that Skahan's WC Claim 2 was barred by the five-year statute of limitations under HRS section 386-82.

(5) In his fifth point of error, Skahan asserts that the LIRAB erred in concluding that Stutts Construction is not liable, and Skahan is not entitled to further medical benefits, for the June 19, 2002 Work Injury after April 16, 2004. Skahan's argument turns on whether the request in his WC Claim 2 to reopen his WC Claim 1 for the June 19, 2002 Work Injury should be granted.[6] As explained below, Skahan's request to reopen his claim was correctly denied. Therefore, Skahan's argument is without merit.

(6) In his sixth point of error, Skahan asserts that the LIRAB erred in denying his WC Claim 2 request for a reopening of his WC Claim 1 for the June 19, 2002 Work Injury claim. Skahan challenges FOF 30, and implicitly challenges COL 1.[7]

HRS section 386-89 allows a party to apply for reopening of a case. In pertinent part, it states:

> (c) On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, *the director may, at any time prior to eight years after date of the last payment of compensation,* whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation.

---

[6]     In asserting that he is entitled to further medical benefits for his June 19, 2002 Work Injury, Skahan specifically argues that:

> Once again, if this injury should be determined as a re-opening, all the reasons stated and argued, herein above, indicate [the LIRAB] erred and [Skahan] is entitled to further medical benefits for the June 19, 2002 work injury after April 16, 2004. This date, by [the LIRAB], is also error, as the last date of payment was in December of 2005, as the reliable, probative, and substantial evidence in the record indicates. Thus, this finding of fact or conclusion of law, is clearly erroneous also, and not supported by the evidence in the case file.

[7]     COL 1 provides, in pertinent part:

> Based on the foregoing findings, including the finding that more than eight years have passed since the date of the last payment of compensation for the June 19, 2002 work injury, [LIRAB] concludes that [Skahan's] May 10, 2013 request for reopening of the June 19, 2002 injury claim is denied.

Haw. Rev. Stat. § 386-89(c) (1993) (emphasis added).

In FOF 30, the LIRAB found that "[Skahan]'s May 10, 2013 request to reopen for further benefits for his June 19, 2002 work injury was filed more than eight years after the last date of compensation paid by [Stutts Construction] for the June 19, 2002 work injury."  The record supports the LIRAB's finding. Anne Okabe, the claims adjuster on Skahan's case, certified that the date of the last payment of compensation in Skahan's WC Claim 1 for the June 19, 2002 Work Injury was December 6, 2003.[8] Skahan was aware that this marked the last payment of compensation as First Insurance sent Skahan a final WC-3 Carrier Case Report, dated April 16, 2004, notifying him that his case would be closed following the final payment of compensation, but that he could reopen his claim pursuant to HRS section 386-89. Skahan subsequently had until December 6, 2011, eight years from the date of the last payment of compensation, to make his request to reopen his WC Claim 1.  Because Skahan filed his WC Claim 2 on May 10, 2013, however, the LIRAB did not err in concluding that Skahan's request to reopen his WC Claim 1 for the June 19, 2002 Work Injury was barred by the eight-year statute of limitations under HRS section 386-89(c).

(7) In his seventh point of error, Skahan asserts that the LIRAB erred in affirming the Director's WC Claim 2 Decision. Skahan argues that "the Director's Decision and Order, was made upon unlawful procedure, in violation of statutory provisions, and or, was an abuse of discretion, as the Director also failed to apply the presumptions, in accordance with HRS 386-85[.]"

Skahan does not identify what procedure was unlawful or why that procedure was unlawful, and does not explain how the Director failed to apply the HRS section 386-85 presumptions, which as we already discussed under Skahan's first point, have no bearing on this case.  Accordingly, these arguments are deemed

---

[8]  The June 21, 2016 Order mistakenly identifies December 16, 2003, instead of December 6, 2003, as the date of Stutts Construction's last paid compensation for the June 19, 2002 Work Injury.  Notwithstanding this ten-day difference, Skahan's May 10, 2013 Claim is still outside the eight-year statute of limitations.

waived. *See Kakinami*, 127 Hawai'i at 144 n.16, 276 P.3d at 713 n.16.

B.   CAAP-16-0000538:   Appeal from the June 22, 2016 Order

(8) In his first point of error with regard to his appeal from the June 22, 2016 Order, Skahan argues that the LIRAB erred by failing to apply the presumptions in accordance with HRS section 386-85. Specifically, Skahan asserts that in the June 22, 2016 Order the LIRAB failed to indicate that it had applied the presumptions under HRS section 386-85.

"Generally, 'a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.'" *Diaz v. Oahu Sugar Co.*, 77 Hawai'i 152, 155, 883 P.2d 73, 76 (1994) (quoting 1 A. LARSON, *The Law of Worker's Compensation* § 13.11, at 3-503 (1993)). The test for determining whether a subsequent injury is a direct and natural result of a compensable primary injury requires a two-step process: "(1) whether any causal connection exists between the original and subsequent injury; and, if so, (2) whether the cause of the subsequent injury is attributable to some activity that would be customary in light of the claimant's condition." *Korsak v. Hawaii Permanente Medical Group*, 94 Hawai'i 297, 305, 12 P.3d 1238, 1246 (2000) (quoting *Diaz*, 77 Hawai'i at 156, 883 P.2d at 77).

Skahan argued below that his CTS was "a new and distinct injury . . . as a direct result of the primary compensable injury of June 19, 2002[.]" The only compensable injury that occurred on June 19, 2002 was to Skahan's right elbow and right forearm. Skahan's argument should therefore be construed as asserting that his right CTS, which was diagnosed in 2011 and became disabling in 2013, was a compensable consequence of the June 19, 2002 Work Injury to his right elbow and forearm.

In FOF 12, the LIRAB found:

> Although [Skahan] alleged that his CTS was a
> compensable consequence of the June 19, 2002 injury, based
> on his trial testimony and the history of the injury that he
> provided to Dr. Capen and Dr. Harvey, [the LIRAB] finds that
> [Skahan] is not attributing his CTS to his June 19, 2002

17

right elbow or forearm injury (tendinitis). [The LIRAB] finds that the subject claim is premised on a right hand CTS injury that developed on June 19, 2002, at the same time he injured his right elbow and forearm on June 19, 2002, while sanding columns at work.

The LIRAB thereafter concluded that

[Skahan's] right CTS was not an injury that was sustained subsequent to or as a direct and natural result of the original, compensable June 19, 2002 work injury, but, instead, was alleged by [Skahan] to be part of the same June 19, 2002 work accident or event that gave rise to his right forearm and elbow injury claim.

The record supports FOF 12 and the LIRAB's conclusion. Contrary to Skahan's assertion that his right CTS was for a new and distinct injury, the September 17, 2013 IME Report documents that Skahan's right CTS, or the symptoms of CTS, developed as a result of Skahan sanding columns at work on June 19, 2002. Similarly, Dr. Capen's September 20, 2013 WC-2 Report states that Skahan asserted that his CTS-related symptoms arose from "[r]epetitive hand sanding of wood columns" on June 19, 2002. In fact, Skahan testified that since 2002, his CTS symptoms have "never gone away. It's never resolved[,]" and "it's gotten progressively worse, each and every year, each and every day." Skahan's right CTS was, therefore, not an injury that was sustained subsequent to or as a direct and natural result of the original, compensable June 19, 2002 Work Injury to his right elbow and forearm, but rather *part of the same* June 19, 2002 Work Injury that gave rise to his WC Claim 1.

Accordingly, Skahan's right CTS fails the first part of the two-step analysis enunciated in *Korsak*, 94 Hawai'i at 305, 12 P.3d at 1246, and subsequently fails the analysis for compensable subsequent injuries in *Diaz*, 77 Hawai'i at 155, 883 P.2d at 76. Because substantial evidence rebuts the presumption and supports the LIRAB's conclusion that Skahan did not sustain CTS to the right hand as a compensable consequence of the June 19, 2002 Work Injury, the LIRAB did not err in applying the presumption in accordance with HRS section 386-85. *Cf. Korsak*, 94 Hawai'i at 309, 12 P.3d at 1250 (concluding that there was insufficient evidence to rebut claimant's contention that his *subsequent* low back injury was a compensable consequence of the primary

compensable work-related injury to claimant's knee and that the physical therapy for the knee injury aggravated claimant's preexisting low back condition).

(9) In his second point of error with regard to his appeal from the June 22, 2016 Order, Skahan argues that the LIRAB erred by limiting the sole issue of compensability to carpal tunnel of the right hand only. Skahan asserts that the LIRAB changed the compensability issue from that of August 19, 2013 WC Claim 3. Skahan additionally contends that the Director changed the compensability issues raised in the WC Claim 3 and argued by Skahan at the DCD hearing of October 15, 2013.

Preliminarily, we have no basis to review Skahan's contention regarding the Director's alleged actions as Skahan fails to provide transcripts from the October 15, 2013 hearing or any citations to the record. Accordingly, we are unable to determine or verify the facts or circumstances surrounding Skahan's contention, and subsequently are unable to address its merits. *See State v. Hoang*, 93 Hawaiʻi 333, 334, 3 P.3d 499, 500 (2000) ("Without the . . . transcript, the Intermediate Court of Appeals did not, and this court does not, have a basis upon which to review the point of error raised in the present appeal." (citing *Bettencourt v. Bettencourt*, 80 Hawaiʻi 225, 231, 909 P.2d 553, 559 (1995))).

Furthermore, Hawaiʻi has recognized that "[t]he general rule that an appellate court will consider only such questions as were raised and reserved in the lower court applies to judicial review of administrative determinations and precludes appellate consideration of questions or issues not raised in the administrative proceedings." *Ariyoshi v. Hawaii Pub. Employment Relations Bd.*, 5 Haw. App. 533, 544-45, 704 P.2d 917, 926 (1985) (citing *Waikiki Resort Hotel, Inc. v. City & Cnty. of Honolulu*, 63 Haw. 222, 250, 624 P.2d 1353, 1372 (1981)). The principle underlying this rule is that "a reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented to the agency and deprives the agency of an opportunity to consider the matter, to make its ruling, and to state the reasons for its

action." *Id.* at 545, 704 P.2d at 926.

In the Pretrial Order, the LIRAB explicitly stated, "The sole issue to be determined is whether [Skahan] sustained a carpal tunnel injury to his right hand as a compensable consequence of the June 19, 2002 work injury." Skahan never attempted to add or amend the issue at any time after the Pretrial Order up until the day of trial. At the start of the January 12, 2015 trial, Skahan affirmed the issue:

> [LIRAB CHAIR]: . . . The pretrial order in this case is dated May 27, 2014. The sole issue to be determined is listed as follows: The sole issue to be determined is whether claimant sustained a personal injury involving his right hand as a compensable consequence of the June 19, 2002 work injury. That's the only issue for this date of accident March 1, 2013. Are there any other issues for the Claimant, Mr. Skahan?

> MR. SKAHAN: No.

Because Skahan did not object to the LIRAB's framing of the issue at the appropriate time, despite being given ample time to do so, he cannot now challenge it. *See Ariyoshi,* 5 Haw. App. at 544-45, 704 P.2d at 926. This point is, therefore, also deemed waived.

(10) In his third point of error with regard to his appeal from the June 22, 2016 Order, Skahan argues that the LIRAB erred by failing to correctly apply HRS section 386-3(a) to the compensability of his WC Claim 3. Specifically, Skahan contends that the LIRAB failed to apply HRS section 386-3(a) when it changed and limited the sole issue to whether he sustained a CTS injury to his right hand as a compensable consequence of the June 19, 2002 Work Injury because HRS section 386-3(a) is applicable to both an injury by accident and an injury by disease.

To the extent that this point addresses whether Skahan's right CTS is an injury by accident or an injury by disease, it has been addressed by the related appeal with regard to the June 21, 2016 Order, and concluded therein that Skahan's right CTS is an injury by accident. To the extent that this point addresses whether the LIRAB erred by limiting the sole issue on appeal, it has been addressed under the second point of error, and concluded therein that Skahan's argument is waived.

HRS section 386-3(a) (2015) provides:

> (a) If an employee suffers personal injury <u>either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment</u>, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as provided in this chapter.
>
> Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of the employee's employment.

(Emphasis added). Skahan relies on the underlined portion of the statute above to argue that the LIRAB erred in failing to correctly apply HRS section 386-3(a) to the subject claim. Skahan contends, without support, that the LIRAB changed or limited the statute to one specific part of that statute, thereby creating the possibility of manifest injustice.

The language in HRS section 386-3(a) highlighted by Skahan, however, does not support Skahan's contention that the LIRAB is obligated to assess his claim as implicating both an injury by accident and an injury by disease. The plain language of the statute indicates that under either circumstances—where "an employee suffers personal injury either by accident arising out of and in the course of employment or by disease proximately caused by or resulting from the nature of employment"—an employee has suffered an injury covered under Workers' Compensation Law. *See* Haw. Rev. Stat. § 386-3; *see also Kaho'ohanohano v. Dep't of Human Servs.*, 117 Hawai'i 262, 281, 178 P.3d 538, 557 (2008) ("Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." (quoting *Liberty Mut. Fire Ins. Co. v. Dennison*, 108 Hawai'i 380, 384, 120 P.3d 1115, 1119 (2005))). Accordingly, Skahan's third point of error is without merit.

(11) In his fourth point of error with regard to his appeal from the June 22, 2016 Order, Skahan argues that the LIRAB erred in concluding that he is actually claiming a CTS injury that occurred on June 19, 2002, the compensability of which was addressed by the June 21, 2016 Order. In sum, it appears that Skahan is attempting to distinguish the subject claim by

characterizing it as an injury by disease, in which the date of the injury was March 1, 2013, from the related claim, in which the date of the injury was June 19, 2002.

In FOF 13, the LIRAB found:

> The subject claim for compensation for an occupational disease of CTS sustained on June 19, 2002 is the same claim that was filed by [Skahan] and decided by the Director in DCD Case No. 09-02-01024 (M) [(now CAAP-16-0000537)]. The [LIRAB's] finding is supported by [Skahan's] contention that he filed this claim, using March 1, 2013 as the date of injury, as an alternative to circumvent any denial of his request to reopen the June 19, 2002 injury claim.

The LIRAB thus concluded that

> [Skahan] is actually claiming a CTS injury that occurred on June 19, 2002, the compensability of which was addressed by the Director in his decision dated January 15, 2014 (DCD Case No. 09-02-01024) and by the [LIRAB] on appeal in its Decision and Order in AB 2014-043 (WH) filed on June 21, 2016.

The LIRAB's finding and conclusion are supported by the record. In Skahan's WC Claim 3, he explicitly notes, "I have filed for Carp[a]l Tunnel Syndrome benefits incase [sic] my 2002 case is not reopened. The effects of Carp[a]l Tunnel have worsened over the last eleven years and became disabling in March of 2013." While stressing that March 1, 2013 was the date of the accident, Skahan testified that he suffered from CTS symptoms since 2002. Skahan maintains that "[t]he record indicates that the aggravation or acceleration, of [his] disease of CTS, was not reported as occurring on June 19, 2002, but developed over a period of time in June, and July, of 2002 and was proximately caused by the work conditions during that time." However, as shown in the September 17, 2013 IME Report, Skahan attributed the pain in his wrist, a CTS-related symptom, to the June 19, 2002 Work Injury in which he was using sandpaper to sand hexagonal columns. Therefore, FOF 13 is not clearly erroneous, and the LIRAB did not err in concluding that Skahan was actually claiming a CTS injury that occurred on June 19, 2002, the compensability of which was addressed by the Director and the LIRAB in the related case.[9/]

---

[9/]     In addition to challenging FOFs 12 and 13, which we have addressed in sections (8) and (11) above, Skahan challenges other FOFs without regard to any particular point of error. Specifically, Skahan challenges FOFs 2, 5, 6,
(continued...)

(12) In his fifth point of error with regard to his appeal from the June 22, 2016 Order, Skahan argues that the LIRAB erred in affirming the Director's WC Claim 3 Decision. Skahan asserts that it is clear that the Director failed to apply the presumptions in accordance with HRS section 386-85. Skahan additionally asserts that the LIRAB's affirmation of the WC Claim 3 Decision "was made upon an unlawful procedure, is [a]rbitrary, or capricious, or characterized by abuse of discretion" or clearly unwarranted exercise of discretion, was clearly erroneous based upon the record, "and in violation of constitutional or statutory provisions."

In the WC Claim 3 Decision, the Director expressly referenced and applied the presumption under HRS section 386-85 in concluding that, based on Skahan's WC Claim 3—which stated that Skahan was filing the subject claim "incase [sic] [his] 2002 case is not reopened" and that "[t]he effects of Carp[a]l Tunnel have worsened over the last eleven years and became disabling in March of 2013"—and based on the fact that Skahan was not employed with Stutts Construction on March 1, 2013, Skahan did not suffer a compensable injury to his right hand on March 1, 2013. In affirming the WC Claim 3 Decision, the LIRAB found that Skahan's right hand or wrist injury in the subject claim resulted from the June 19, 2002 Work Injury rather than from any incident on March 1, 2013. As discussed under the fourth point, the LIRAB's finding and conclusion are supported by the record. The LIRAB therefore did not err in affirming the WC Claim 3 Decision.

As to his remaining arguments, Skahan does not identify which procedure he is referring to, and does not explain how the LIRAB's affirmation of the WC Claim 3 Decision was made upon an unlawful procedure or how the procedure was unlawful, arbitrary, capricious, or an abuse of discretion. Additionally, Skahan does not explain why the WC Claim 3 Decision was clearly erroneous and is a violation of constitutional or statutory provisions, which he fails to identify, and does not provide citations to the

_____

[9] (...continued)
7, 8, 9, 10, and 11. Each of the challenged FOFs, however, are demonstrably true and not, therefore, clearly erroneous.

record which demonstrate that there is reliable, probative, and substantial evidence to support his allegations. Accordingly, these arguments are deemed waived.

IV.   Conclusion

Therefore, IT IS HEREBY ORDERED that the June 21, 2016 Order and the June 22, 2016 Order, each entered by the Labor and Industrial Relations Appeal Board, are affirmed.

DATED:   Honolulu, Hawai'i, August 9, 2019.

On the briefs:

Kenneth N. Skahan,
Self-represented Claimant-
Appellant.

Laurie E. Keeno
(Law Offices of Leslie R. Kop)
for Employer-Appellee and
Insurance Carrier-Appellee.

Presiding Judge

Associate Judge

Associate Judge